## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CALVIN JORDAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 12-0127-WS** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## ORDER

This matter comes before the Court on petitioner Calvin Jordan's *pro se* filing styled "Emergency Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)" (doc. 83).

The court file reflects that Jordan entered a guilty plea to one count of aiding and abetting the using, carrying and possession of a firearm in furtherance of and in relation to a drug trafficking felony, which caused the death of a person through use of the firearm, in violation of 18 U.S.C. §§ 924(c)(1), 924(j)(1) and 2.  The charge stemmed from Jordan's involvement in a home invasion whose objective was to burglarize the dwelling and steal controlled substances and cash, but which resulted in the homeowner being shot to death in the street.  The murder weapon was found in Jordan's vehicle, and Jordan received some of the cash stolen in the robbery.  On October 8, 2015, following a Government motion for downward departure based on cooperation, this Court sentenced Jordan to a total term of imprisonment of 140 months. According to Bureau of Prisons records, Jordan has nearly two years left to serve on that sentence, with a projected release date of May 28, 2022.  He is presently at FCI Jesup in Jesup, Georgia, where he is housed in the low-security satellite prison with approximately 385 other inmates.  Total population at FCI Jesup, including all three housing complexes, is approximately 1,330 inmates.

Jordan is one of numerous defendants who has petitioned this Court for compassionate release or modification of sentence based on the effects of the COVID-19 pandemic.  In his Motion, filed *pro se*, Jordan invokes 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603 of the

First Step Act enacted in December 2018.  That section allows a defendant to petition the Court directly for reduction of a term of imprisonment for "extraordinary and compelling reasons," without a motion by the Director of the Bureau of Prisons ("BOP"), after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."  § 3582(c)(1)(A). However, Jordan makes no showing that he ever submitted a request for compassionate release to the Warden of FCI Jesup.  Without such a showing, Jordan is not authorized by the amended version of the statute to request judicial modification of his term of imprisonment on the ground that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).[1]

Moreover, the statute is clear that any such reduction of a sentence for "extraordinary and compelling reasons" must be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's applicable policy statement, set forth at Application Note 1 to the Commentary of § 1B1.13 of the Federal Sentencing Guidelines, defines "extraordinary and compelling reasons" justifying sentence reduction as including (i) the defendant's serious medical condition diminishing his ability to provide self-care within the environment of a correctional facility; (ii) the advanced age of the defendant; (iii) family circumstances such as death or incapacitation of the caregiver of the defendant's minor children; and (iv) other reasons "[a]s determined by the Director of the Bureau of Prisons."  *Id.*  Jordan's Motion does not implicate the first three categories of extraordinary and compelling reasons;[2] therefore, his request would appear to rise or fall on the fourth ground identified by the Sentencing Commission.

---

[1]    To be sure, Jordan argues that he should be excused from any exhaustion requirement because of the need for "prompt and meaningful judicial determination" and the risk that if administrative prerequisites are strictly enforced, then "prisoners bringing compassionate release [motions] due to COVID-19 may <u>never</u> obtain timely judicial review before the virus takes its toll."  (Doc. 83, PageID.416-17.)  This argument is not persuasive.  After all, Jordan tarried for five months after the onset of the coronavirus outbreak in the United States before filing his Emergency Motion.  He offers no explanation why he could not have submitted the requisite request for compassionate release to the Warden of FCI Jesup at least 30 days prior to filing such Motion, so as to satisfy statutory exhaustion prerequisites.

[2]    Jordan's Motion does not reflect that he suffers from any serious medical conditions at this time.  At most, he alleges that he is obese and that he has a family history of certain medical conditions that do not afflict him at present.

The BOP's Program Statement 5050.50 identifies in some detail the types of reasons that the Director of the BOP deems "extraordinary and compelling" within the fourth prong of the Sentencing Commission's policy statement.  Nothing in PS 5050.50 reflects a determination by the BOP that compassionate release may be appropriate based on an inmate's generalized fear of contracting COVID-19 in prison.  As such, Jordan is effectively urging this Court to find that his circumstances constitute an "extraordinary and compelling reason" for § 3582(c)(1)(A) relief, even though doing so would not be within the scope of reasons determined by the BOP to be extraordinary and compelling and therefore would not be consistent with the Sentencing Commission's applicable policy statement.  Simply put, then, Jordan's Motion would have this Court ignore statutory language requiring that sentence reductions for "extraordinary and compelling reasons" be consistent with Sentencing Commission policy statements by essentially superimposing the Court's own policy preferences over those of the Sentencing Commission and the Bureau of Prisons.  This Court has previously declined to do so.  *See United States v. Lynn*, 2019 WL 3805349, *4 (S.D. Ala. Aug. 13, 2019) ("Should the Commission so amend its policy statement, the courts will of course be bound by Section 3582(c)(1)(A) to follow the amended version.  Until that day, however, the Court must follow the policy statement as it stands.").  It reaches the same conclusion today for the same reasons set forth in *Lynn*.

Even assuming this Court were empowered now to make determinations of "extraordinary and compelling reasons" in addition to those specified in U.S.S.C. § 1B1.13 and PS 5050.50, the undersigned would not find that the circumstances described by Jordan meet that high standard for compassionate release.  To understand why, it is helpful to examine § 12003(b)(2) of the CARES Act, which granted the Attorney General authority to lengthen the maximum amount of time for which the BOP is authorized to place a prisoner in home confinement beyond the limits imposed by 18 U.S.C. § 3624(c)(2).[3]  In exercising this authority, the Attorney General has issued Memoranda to the Director of the BOP dated March 26, 2020 and April 3, 2020.  Among other things, those Memoranda enumerate criteria for inmates to be eligible for home confinement.  Those discretionary factors include, without limitation, the

---

[3] Jordan has specifically requested early release, rather than the ability to serve the remainder of his sentence under home confinement.  However, the factors that are relevant in the home confinement inquiry are also helpful in analyzing whether a defendant should be granted early release under the First Step Act because of COVID-19 related concerns.

following: (i) the age and vulnerability of the inmate to COVID-19, in accordance with CDC guidelines; (ii) the security level of the facility, with priority given to inmates residing in low and minimum security facilities; (iii) the inmate's conduct in prison; (iv) the inmate's score under PATTERN, with inmates scoring above the minimum score not receiving priority treatment; (v) whether the inmate has a demonstrated, verifiable re-entry plan that will prevent recidivism and maximize public safety; and (vi) the seriousness and severity of the inmate's crime of conviction and danger posed by the inmate to the community.  The Attorney General also directed the BOP to maximize appropriate transfers to home confinement of all appropriate inmates held at BOP facilities where significant levels of COVID-19 infection are materially affecting operations.

Many of the non-exhaustive factors listed in the Attorney General's Memoranda do not favor home confinement or early release in this case.  The court file reflects that Jordan is 44 years old, so he is not of an advanced age that might heighten his risk of contracting COVID-19. Additionally, Jordan's Motion does not identify any medical conditions that might render him particularly vulnerable to a serious case of COVID-19 infection.[4]  Jordan's overall health status is reinforced by the April 2015 Presentence Investigation Report, in which he informed the probation officer "that he does not have any physical health problems, and is not under the care of a physician."  (Doc. 57, PageID.337, ¶ 63.)  Also weighing against granting compassionate release in this case is the fact that Jordan's crime of conviction is a very serious firearms offense connected to a drug-related home invasion that culminated in the murder of the homeowner.

While Jordan attempts to portray the situation at FCI Jesup as dire from an inmate health standpoint, with an active COVID-19 outbreak spreading rapidly through the complex, current data available to the Court tell a markedly different story.  Specifically, as of August 10, 2020, BOP data confirms that there are only 3 active cases of COVID-19 in the entire inmate population at that facility (again, there are approximately 1,330 prisoners housed at FCI Jesup), with 252 cases of inmates who have <u>recovered</u> from the virus.  This data strongly supports a conclusion that there is no active outbreak of the coronavirus at FCI Jesup, and that the BOP's

---

[4]     At most, Jordan's Motion indicates that he is "obese" and that his "family has a history of asthma, high blood pressure, cancer, heart disease and diabetes."  (Doc. 83, PageID.418.)  Jordan does not state that any of these family medical conditions presently affect him, nor does he point to any link between his level of obesity (whatever that might be) and COVID-19 risks.

efforts to safeguard inmates, contain the virus, and stop the spread have been effective at that location.  As for Jordan's suggestion that the BOP has failed to perform testing at that institution, the data shows otherwise, reflecting that 396 inmates at FCI Jesup have been tested for COVID-19.  On this showing, the Court cannot and does not credit Jordan's narrative that compassionate release is warranted because of uncontrolled "very scary" coronavirus infections running rampant through the correctional institution in which he is housed.

After weighing all of the relevant circumstances and information presented, the Court concludes that Jordan has made no showing that he is even eligible for relief, much less any showing of the sort of "extraordinary and compelling reasons" contemplated by 18 U.S.C. § 3582(c)(1)(A)(i) that might warrant the discretionary exercise of any First Step Act authority for compassionate release, sentence modification, or release to home confinement to protect him from risks of contracting the COVID-19 virus in prison.  Accordingly, Jordan's Emergency Motion for Compassionate Release (doc. 83) is **denied**.

DONE and ORDERED this 11th day of August, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE